IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CITY OF BLUEFIELD,**
**Employer Below, Petitioner**

**FILED**
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-405**        (JCN: 2023010227)

**S.S.,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner City of Bluefield ("the City") appeals the September 26, 2025, order of the Workers' Compensation Board of Review ("Board"), which modified the claim administrator's May 13, 2025, order to include posttraumatic stress disorder ("PTSD") and major depressive disorder as compensable diagnoses in Respondent S.S.'s[1] claim. S.S. filed a response.[2] The City did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

In November of 2022, S.S. was working for the City performing maintenance underneath a garbage truck when it was struck by another vehicle, and he was dragged several feet sustaining injuries. As a result of this incident, S.S. filed a workers' compensation claim that was deemed compensable.[3]

On December 7, 2023, S.S. was seen by Theresa Bishop, LPC, for an initial assessment. S.S. reported difficulty sleeping and concentrating, loss of interest in activities,

---

[1] We use initials to identify the respondent because this case references sensitive medical information. *See* W. Va. R. App. Proc. 40(e)(4).

[2] The City is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. S.S. is represented by Robert F. Vaughan, Esq., and Linda N. Garrett, Esq.

[3] None of the compensability orders related to S.S.'s initial workers' compensation claim are included in the record on appeal.

1

and feeling fatigued, hopeless, worthless, guilty, and irritable following his workplace injury. S.S. stated he was traumatized by his workplace injury, that he was irritable and jumpy, and that he could no longer work underneath vehicles without triggering intrusive thoughts about the incident. LPC Bishop diagnosed S.S. with PTSD, major depressive disorder, and generalized anxiety disorder and recommended individual therapy sessions.

On December 4, 2024, Rosemary L. Smith, Psy.D., issued a psychological evaluation stating S.S. felt that his life had been disrupted by health problems caused by his workplace injury. S.S. admitted to feeling sad, losing interest in normal activities, and losing pleasure in things that were previously enjoyable. Dr. Smith further stated that S.S. showed an unusual degree of concern about physical functioning, health matters, and physical impairment. Dr. Smith concluded that S.S.'s testing showed emotional distress, anxiety, depression, and moderate somatization.

On December 6, 2024, Timothy Thistlethwaite, M.D., a psychiatrist, issued an independent medical evaluation, which was performed at the request of S.S.'s legal counsel. S.S. stated that about two months after his workplace injury, he realized he was going to have a long-term issue and began to develop anxiety and depression. S.S. reported symptoms of irritability, depression, anxiety, nervousness, occasional nightmares, flashbacks related to the injury, hypervigilance in public, difficulty sleeping, decreased energy and concentration, decreased motivation, and feelings of anhedonia, hopelessness, helplessness, and worthlessness. S.S. reported no prior history of mental health problems and stated he had never been in therapy or taken psychiatric medications prior to his workplace injury. Based upon his clinical examination and a review of the available medical records, Dr. Thistlethwaite diagnosed S.S. with PTSD and major depressive disorder, single episode, secondary to chronic pain. He recommended S.S. be referred to a psychiatrist for further evaluation and potential treatment and estimated that S.S. would likely require psychiatric treatment for at least six months. He also opined that S.S. would benefit from a psychological assessment and psychotherapy with a trained provider proficient in treating PTSD.

On March 18, 2025, the Board entered an order affirming the claim administrator's orders dated February 28, 2024, March 4, 2024, and May 10, 2024, and dismissing as moot S.S's protest to the April 2, 2024, order.[4] The Board found S.S. failed to show by a preponderance of the evidence that continued individual psychotherapy sessions were

_____

[4] The claim administrator's orders dated March 4, 2024, and April 2, 2024, denied LPC Bishop's authorization requests for treatment and a psychiatric evaluation on the basis that the treatment was not medically necessary nor reasonably required to treat the compensable conditions in the claim. By order dated May 10, 2024, the claim administrator corrected the April 2, 2024, order and stated that it denied LPC Bishop's request because the claim was not compensable for any psychiatric condition, and LPC Bishop, who is not a psychiatrist, performed a psychiatric evaluation without authorization.

medically necessary and reasonably required to treat the compensable conditions in the claim. At that time, S.S. had no compensable psychiatric condition.

On April 18, 2025, Timothy S. Allen, M.D., a psychiatrist, issued an independent psychiatric evaluation report at the request of the City's counsel. S.S. reported that he developed a depressed mood, anxiety, upsetting memories related to his work injury, and sometimes ruminated about his injuries and physical disability. Dr. Allen diagnosed S.S. with an adjustment disorder with anxiety and PTSD but further opined that S.S.'s PTSD had resolved. Dr. Allen stated that S.S. developed some PTSD symptoms after the compensable injury but that those symptoms improved over time. As a result, Dr. Allen opined that S.S. no longer met the criteria for PTSD. Dr. Allen further found that psychological testing revealed some evidence of symptom embellishment related to PTSD, but S.S. appeared to genuinely report anxiety. Based on his findings, Dr. Allen opined that S.S. had reached maximum medical improvement from a psychiatric perspective around November 15, 2024, and had a 5% whole person impairment from anxiety related to his compensable work injury.

On May 13, 2025, the claim administrator held S.S.'s claim compensable for adjustment disorder with mild anxiety. S.S. protested this order. On September 26, 2025, the Board entered an order modifying the claim administrator's May 13, 2025, order to include PTSD and major depressive disorder as compensable diagnoses in S.S.'s claim. It is from this order that the City now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

3

On appeal, the City asserts one assignment of error and argues the Board erred in including psychiatric conditions as compensable diagnoses in this claim because S.S.'s initial psychiatric assessment was not performed by a psychiatrist on referral from the treating physician of record, which is required by both West Virginia Code of State Rules § 85-20-12.4 (2006) (hereafter "Rule 12.4") and the Supreme Court of Appeals of West Virginia's ("SCAWV") decision in *Hale v. West Virginia Office of the Insurance Commissioner*, 228 W. Va. 781, 724 S.E.2d 752 (2012). We disagree. The SCAWV's decision in *Hale* holds as follows:

> [Rule 12.4] sets forth the following three-step process that must be followed when a claimant is seeking to add a psychiatric disorder as a compensable injury in his/her workers' compensation claim: (1) the claimant's treating physician refers the claimant to a psychiatrist for an initial consultation; (2) following the initial psychiatric consultation, the psychiatrist is to make a detailed report consistent with the procedure described in [Rule 12.4]; and (3) the claims administrator, aided by the psychiatrist's report, is to determine whether the psychiatric condition should be added as a compensable injury in the claim.

*Id.* at 782, 724 S.E.2d at 753, Syl. Pt. 2. It is undisputed that this process was not followed here because S.S. was referred to a psychiatrist by his attorney and not his treating physician, which is required under the first step of this test. Despite this error, the Board found that S.S. showed by a preponderance of evidence that PTSD and major depressive disorder resulted from his compensable injury and should be included as compensable diagnoses in this claim. We hold that the Board's decision was not erroneous because the SCAWV's recent decisions in both *Genesis Healthcare Corp. v. D. N.*, No. 21-0500, 2023 WL 355658 (W. Va. Jan. 23, 2023) (memorandum decision) and *E.B. v. Alliance Coal, LLC*, No. 23-409, 2025 WL 1203177 (W. Va. Apr. 25, 2025) (memorandum decision) demonstrate a shift in the SCAWV's application of Rule 12.4 and no longer require a strict application of this rule.

In *Genesis*, the SCAWV found that psychiatric conditions were compensable components of a claim even though the psychiatrist who completed the Diagnosis Update did not complete a detailed psychiatric report, which is required under Rule 12.4. *Genesis*, 2023 WL 355658, at *5. The SCAWV acknowledged that the procedure described in *Hale* and Rule 12.4 was not followed but agreed with the Office of Judges' conclusion that the treatment notes and the Diagnosis Update form provided the claim administrator with all the information it needed to rule on compensability. *Id.* at *4-5. In other words, the SCAWV focused on whether the claimant provided enough medical information to the claim administrator for it to make a reasoned decision on compensability rather than whether the exact processes and procedures described in *Hale* and Rule 12.4 were followed.

4

Next, in *E.B.*, the SCAWV vacated and remanded a decision by this Court because it determined we erred by construing the requirements of Rule 12.4 to exclude a psychiatric evaluation conducted by a resident physician who had not yet completed his training to become a psychiatrist. *E.B.*, 2025 WL 1203177, at *2-3. The SCAWV held that this Court erred in failing to remand this claim back to the Board to allow the claimant another opportunity to submit a psychological report from a qualified psychiatrist, which would comply with Rule 12.4. *Id.* at *2. Again, the SCAWV acknowledged that the claimant failed to strictly comply with the requirements of Rule 12.4 but did not find that this error was fatal to the compensability of the claim.

While neither of these cases precisely address the issue on appeal here, the SCAWV's decisions in *Genesis* and *E.B.* discourage a strict application of the requirements set forth in Rule 12.4. Further, in *E.B.*, the SCAWV emphasized that "[t]he fundamental principle of workers' compensation legislation is to provide reasonable and necessary medical treatment to employees who are injured on the job." *Id.* at *2. It then also reiterated its prior holding stating that "[o]ne of the basic purposes of workmen's compensation legislation is to impose upon industry the cost of medical expenses incurred in the treatment and rehabilitation of workers who have suffered injuries in the course of and as a result of their employment", and referenced West Virginia Code § 23-1-1(b) (2022), which provides that the Workers' Compensation Act shall "be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers[.]" *Id.* (quoting Syl. Pt. 2, in part, *Ney v. Workmen's Comp. Comm'r*, 171 W. Va. 13, 297 S.E.2d 212 (1982)). The SCAWV's reliance on this precedent is especially relevant here because the City does not challenge the Board's determination that S.S. showed by a preponderance of evidence that his PTSD and major depressive disorder resulted from his compensable injury. As a result, it is undisputed that S.S. developed these psychiatric conditions because of his occupational injury. The only question on appeal is whether these conditions can be added to the claim due to S.S.'s failure to strictly comply with the requirements of Rule 12.4. While the SCAWV has not overturned Rule 12.4 or its holding in *Hale*, its recent decisions discourage a finding that S.S's undisputed psychiatric conditions are not compensable based solely on his failure to strictly comply with the requirements of Rule 12.4. As a result, we find the Board did not err in holding S.S.'s PTSD and major depressive disorder as compensable conditions in this claim.

Accordingly, we affirm the Board's September 26, 2025, order.

Affirmed.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White